UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONALD B.

                                          Plaintiff,                    21-CV-01302-HKS

v.

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #9.

## BACKGROUND

On November 12, 2019, plaintiff, at the age of 50, filed a Title II application for a period of disability and disability insurance benefits. Dkt. #4, pp. 193, 325-337.[1] Plaintiff alleged he was disabled due to blind or low vision; major depressive disorder; severe anxiety/panic attacks; stroke/blood clot in artery/stents in head; brain arterial blockage; and rotator cuff/loss of muscle left arm, with an onset date of June 3, 2018. Dkt. #4, pp. 193, 307, 326.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

The SSA denied plaintiff's claim initially on February 19, 2020, and on reconsideration on July 3, 2020. Dkt. #4, pp. 208-214, 220-232.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Dkt. #4, pp. 232-233, and a telephonic hearing was held on December 17, 2020 before ALJ Timothy Belford. Dkt. #4, pp. 38-72. Plaintiff appeared with counsel at the hearing.

Plaintiff testified that he completed eleventh grade and does not have a GED. Dkt. #4, p. 43. He has a driver's license. Dkt. #4, p. 43. His most recent job was as a truck driver where he drove semis and triaxle dump trucks. Dkt. #43, p. 44. He also operated heavy equipment, such as loaders and backhoes. Dkt. #4, p. 44. He had previously worked for the State of New York operating a snowplow and cutting grass. Dkt. #4, p. 45. Prior to that, plaintiff drove various types of trucks for a construction company. Dkt. #4, p. 45.

Plaintiff testified that he stopped working because he started to experience memory loss, anxiety, and panic attacks. Dkt. #4, p. 45. He would forget where he was going which caused concerns about safety. Dkt. #4, pp. 46-47. He stopped driving around June 8, 2018, and his mother now drives him to his appointments. Dkt. #4, pp. 48-49.

Plaintiff further testified that, for the most part, he was not having any physical problems doing his job. Dkt. #4, pp. 47-48.

Further, plaintiff's neurologist told him that, due to blockages in his arteries, he should not drive. Dkt. #4, p. 48. Plaintiff testified that he has a stent in one side of his brain and that his neurologist told him he has a blockage on the other side. Dkt. #4, pp. 50-51.

As to his daily activities, plaintiff testified that he stays inside because of his anxiety. Dkt. #4, p. 51. He does not cut the grass or run the snowblower. Dkt. #4, p. 51. He cannot go shopping, and his mother does his shopping for him. Dkt. #4, p. 51.

Plaintiff also testified that he needs reminders to shower and sometimes does not shower for two weeks. Dkt. #4, p. 58.

Plaintiff denied that he drinks a twelve-pack of beer a day, but instead testified that he drinks four to five beers a week. Dkt. #4, pp. 51-52. He does not believe that drinking would prevent him from working. Dkt. #4, p. 52.

Plaintiff also testified that he has been in mental health treatment for over ten years. Dkt. #4, p. 48. He takes medications for his anxiety and depression, but he still has panic attacks about four times a week. Dkt. #4, pp. 55-56. After the panic attacks, he lies down for a couple of hours. Dkt. #4, p. 57.

The ALJ then heard testimony from Kenneth Smith, a vocational expert ("VE"). The ALJ asked the VE to consider a hypothetical individual with the same vocational profile as plaintiff who was: limited to light exertion work, with no more than

occasional climbing of ramps, stairs, and ladders; no more than occasional crawling, kneeling, and crouching; and no more than frequent handling and reaching. Dkt. #4, p. 63. The individual would also need to avoid more than occasional exposure to workplace hazards, such as unprotected heights and dangerous moving machinery. Dkt. #4, p. 63. Further, he would be limited to simple routine tasks with no more than occasional workplace changes and no more than occasional interaction with coworkers, supervisors, and the public. Dkt. #4, p. 63.

The VE testified that such a person would be able to perform the unskilled light duty jobs of housekeeping cleaner, marker, and mail clerk. Dkt. #4, p. 64. The VE testified that this opinion would not change with the additional limitation of no interaction with the public. Dkt. #4, p. 64. Further, the tolerance for time off task would be no more than 10%, and for absenteeism, it would be no more than once a month. Dkt. #4, p. 64.

On March 4, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #4, pp. 20-31. The Appeals Council denied plaintiff's request for review on October 29, 2021, making the ALJ's decision the final decision of the Commissioner. Dkt. #4, pp. ##5-8. Plaintiff filed this action on December 23, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and

were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling

impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 3, 2018; (2) plaintiff has the severe impairments of vascular insult to the brain, obesity, left rotator cuff tear, degenerative disc disease of the cervical spine, anxiety, and depression;  (3) plaintiff's impairments do not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[2], except no more than occasional crawling, kneeling, crouching or climbing of ramps, stairs or ladders; no more than frequent handling or reaching; no more than occasional exposure to workplace hazards such as unprotected heights and dangerous moving machinery; he is limited to simple, routine tasks with no more than occasional workplace changes and no more than occasional interaction with coworkers, supervisors, or the public; (5) plaintiff is unable to perform any past relevant work; and (6) plaintiff is capable of working as a housekeeper

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b).

cleaner, marker, and mail clerk, and is not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp. 12-24. Dkt. #6, pp. 19-29.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)).

Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**

Plaintiff makes two challenges to the ALJ's decision: (1) he failed to assess the persuasiveness of Dr. Christine Ransom's opinion; and (2) he erred by substituting his own lay opinion for that of medical opinion evidence and by failing to identify substantial evidence supporting the RFC. Dkt. #5-1, p. 1.

### **Dr. Ransom's Opinion**

The ALJ discussed the report of Dr. Christine Ransom, PhD, a psychological consultative examiner who examined plaintiff on January 24, 2020. Dkt. #4, pp. 28, 832-836. As plaintiff notes, however, the ALJ did not specifically evaluate the persuasiveness of Dr. Ransom's opinion. Dkt. #4, p. 28. This was erroneous. *See Jennifer G. v. Comm'r of Soc. Sec.*, 5:22-CV-00996 (MAD/ML), 2023 WL 8435991, at *5 (N.D.N.Y. Sept. 6, 2023)

(under 2017 revised regulations, ALJ must evaluate the persuasiveness of all medical opinions) (citation omitted).

However, the "Second Circuit and this court have found that remand is not required on the basis that the ALJ did not evaluate an opinion where evaluation of the opinion would not have changed the outcome." *Sherry T. v. Comm'r of Soc. Sec.*, CASE # 1:21-cv-00977, 2023 WL 8030129, at *5 (W.D.N.Y. Nov. 20, 2023) (citing *Zabala v. Astrue*, 595 F.3d 410 (2d Cir. 2010)).

Here, the ALJ's failure to assess the persuasiveness of Dr. Ransom's opinion was harmless error.

First, in formulating plaintiff's RFC, the ALJ specifically discussed Dr. Ransom's findings: although plaintiff displayed a "moderately pressured affect" during the exam, he was cooperative and socially appropriate; his speech was fluent and intelligible; his thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia; his immediate, recent, and remote memory was intact; his intellectual functioning was average; and his attention and concentration were intact. Dkt. #4, p. 28 (citing Dkt. #4, pp. 833-834). The ALJ also noted that plaintiff told Dr. Ransom that he was able to dress, bathe, groom himself, and do light cooking, cleaning, laundry, and shopping. Dkt. #4, p. 28.

Although the ALJ failed to assess the persuasiveness of Dr. Ransom's opinion, his narrative demonstrates that, at least in part, he factored Dr. Ransom's findings into plaintiff's RFC. *See Jacqueline C. v. Comm'r of Soc. Sec.*, CASE #20-cv-01606, 2022 WL 4632226, at *6-7 (W.D.N.Y. Sept. 30, 2022) (finding no error where ALJ failed to evaluate persuasiveness of consultative psychologist's opinion where decision discussed her findings).

Second, the ALJ considered and found "partially persuasive" the assessments of two state agency psychological consultants, Drs. Juriga and May, who themselves considered Dr. Ransom's report in forming their medical opinions. While noting Dr. Ransom's opinion that plaintiff had "moderate" limitations in certain areas, these agency consultants nonetheless opined that plaintiff "is deemed to retain capacities for understanding, remembering, carrying out, at the least, noncomplex instructions, and for relating appropriately under conditions of reduced interpersonal contact." Dkt. #4, pp. 24, 28-29 (citing Dkt. #4, pp. 182, 200, 838). *See Sherry T.*, 2023 WL 8030129, at *5 (ALJ's failure to evaluate persuasiveness of examiner's opinion was harmless where that opinion was considered in administrative findings of state agency consultants on which ALJ relied).

Plaintiff thus has not shown that, had the ALJ expressly assessed the persuasiveness of Dr. Ransom's opinion, it would have affected the outcome of his decision.

Plaintiff also argues that if "properly considered and credited, Dr. Ransom's opinion would require additional limitations and a finding of disability." Dkt. #5-1, p. 19. This argument fails for several reasons.

First, this argument assumes that the ALJ would have found persuasive Dr. Ransom's opinion that plaintiff had "moderate" limitations in regulating emotions, controlling behavior, and maintaining wellbeing. As noted, however, the ALJ deferred to the two agency psychological consultants who had reviewed Dr. Ransom's opinion and nonetheless did not recommend more restrictive limitations.

Second, the RFC limited plaintiff not only to "light work," but also to "simple routine tasks with no more than occasional work place changes and no more than occasional interaction with coworkers, supervisors or the public." Dkt. #4, p. 25. The ALJ specifically noted that these restrictions were intended to address plaintiff's psychological limitations as assessed by the two state consultants, Drs. Juriga and May. Dkt. #4, p. 24.

An "RFC allowing for an exertional limitation of light work can sufficiently and appropriately accommodate the capacities of individuals with both *moderate* physical and *psychological limitations*." *Rama v. Acting Comm'r of Soc. Sec.*, 22-CV-6928 (JLC), 2023 WL 8379265, at *17 (S.D.N.Y. Dec. 5, 2023) (emphasis added). Moreover, additional restrictions to low-stress work and occasional interactions with coworkers, supervisors, and the public are consistent with "moderate" limitations in regulating emotions, behavior, and well-being. *See, e.g., Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 12

(W.D.N.Y. 2021). *See also Allisa P. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-556-DB, 2024 WL 278227, at *18 (W.D.N.Y. Jan. 25, 2024) ("Dr. Farmer's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is consistent with the ALJ's RFC finding for simple, unskilled, work involving limited social interaction.").

Thus, the RFC that the ALJ reached would address the "moderate" limitation contained in Dr. Ransom's opinion.

For these reasons, the Court finds no basis for remand based on the ALJ's treatment of Dr. Ransom's opinion.

**The ALJ's Formulation of Plaintiff's RFC**

Plaintiff next argues that the ALJ erred by substituting his own lay opinion for that of medical opinion evidence and by failing to identify substantial evidence supporting the RFC. Dkt. #5-1, p. 21. This argument is not supported by the record.

First, the Court notes that plaintiff's argument rests almost entirely on blanket assertions and boilerplate citations, unsupported by any reference to the ALJ's decision itself. Dkt. #5-1, pp. 21-29.

The only specific error plaintiff alleges is the ALJ's assessment of the opinion of Dr. Loida D. Reyes, plaintiff's treating psychiatrist, as "unpersuasive." Dkt. #5-

1, p. 29. Yet the ALJ gave specific reasons for this finding: Dr. Reyes's treatment records showed that, "aside from occasional slight deficit in delayed recall and occasional slowed response in attention and concentration, [plaintiff] showed no meaningful evidence of an inability to perform simple, routine tasks." Dkt. #4, p. 28. The ALJ further explained that the "assessments of Dr. Reyes are too extreme and do not match the longitudinal direct evidence of grossly normal psychological function mentally." Dkt. #4, p. 29. This assessment is thus consistent with applicable regulations. *See* 20 C.F.R. § 416.920c(c)(1) (persuasiveness of medical source opinion turns, in part, on whether it is supported by objective medical evidence).

Next, as previously noted, the ALJ gave deference to the opinions of the state agency psychological consultants who opined that plaintiff's mental impairments were not nearly so limiting. Dkt. #4, pp. 24, 28-29. It is well established that "genuine conflicts in the medical evidence are for the Commissioner to resolve." *Joseph S. v. Comm'r of Soc. Sec.*, 21-CV-01215-MJR, 2023 WL 8798128, at *2 (W.D.N.Y. Dec. 20, 2023) (citation and internal quotation marks omitted).

The ALJ also based the RFC on multiple sources of record evidence: plaintiff's hearing testimony; treatment records of plaintiff's history of a stroke in 2012 and his recovery; subsequent records showing intact neurological examinations; plaintiff's medical history of a rotator cuff tear and repair and cervical disc disease; plaintiff's obesity; extensive records of plaintiff's mental health treatment; and medical opinions and prior administrative medical findings. Dkt. #4, pp. 25-29.

Although plaintiff makes no specific challenge to the physical component of the RFC, the Court notes that, as to plaintiff's stroke history and obesity, the ALJ limited plaintiff to "a light residual functional capacity with some other restrictions," which he deemed more conservative than the record dictated. Dkt. #4, p. 26.

The same is true of the ALJ's consideration of plaintiff's shoulder injury and disc disease. Although the medical records showed "no meaningful evidence of persistent functional limitations directly associated with the neck or left shoulder," the ALJ nonetheless "limited the claimant to no more than frequent handling and reaching." Dkt. #4, p. 27.

As to plaintiff's mental RFC, the ALJ discussed treatment records from a variety of providers documenting a longstanding history of mental health issues," but he concluded that "the evidence is not consistent with the allegations to the degree alleged and does not support greater functional limitations." Dkt. #4, p. 27.

The ALJ specifically noted consistent assessments of plaintiff by various mental health providers over approximately six years: calm, cooperative behavior; organized, simple thought process; intact recall; average intellectual functioning; no indication of trouble with concentration; linear and coherent thoughts; and normal mental status function. Dkt. #4, pp. 27-28. Concluding that these findings were "relatively benign,"

the ALJ determined that the RFC was appropriate to plaintiff's ability to function. Dkt. #4, p. 28.

Finally, while plaintiff argues that the ALJ should have limited him to "sedentary" work, citing his age and work history, plaintiff points to no medical evidence that would dictate such a finding. Dkt. #5-1, p. 28. This argument thus fails. *See Nicolette H. v. Kijakazi*, 21-CV-248F, 2023 WL 2581537, at *6 (W.D.N.Y. Mar. 21, 2023) ("Plaintiff bears the burden of establishing her RFC is more restrictive than the ALJ's determination.") (citation and internal quotation marks omitted).

Thus, contrary to plaintiff's argument, the ALJ did not base the RFC on his "own surmise." Dkt. #5-1, p. 28. Rather, he "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted).

In sum, substantial evidence supports the ALJ's RFC, and plaintiff "fails to show that any reasonable factfinder was compelled to assess greater restrictions based on the record, as is required under the substantial evidence standard of review." *Allisa P.*, 2024 WL 278227, at *14.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #7) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York

February 7, 2024

    <u>s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**